# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SHENITA CLEVELAND | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-1154 |
| CITY OF DALLAS, CHIEF ULYSHA RENEÉ HALL, and JOHN DOE POLICE OFFICERS 1-50 | § § § § | |

## <u>ORDER</u>

This Order addresses Defendants U. Reneé Hall and the City of Dallas's Motion to Dismiss Plaintiff's Original Complaint ("Motion") [ECF No. 6] pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Shenita Cleveland did not file any response whatsoever to the Motion, nor any motion for an extension to file a response. The Court has reviewed the Motion, Plaintiff's Original Complaint & Jury Demand ("Complaint") [ECF No. 1], appended documents, and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

## I.   BACKGROUND

The events underlying Plaintiff's suit arise from the Dallas Police Department's response to protests in Dallas in the aftermath of George Floyd's death.[1] In her Complaint, Plaintiff alleges that on or about May 31, 2020, she and approximately one hundred to two hundred people engaged in nonviolent protest on Harwood Street in downtown Dallas. Compl. ¶ 28. Thereafter, police officers ordered protestors, including Plaintiff, to "stop, get on the ground, and don't run." *Id.* "Almost simultaneously," officers allegedly started to shoot kinetic impact projectiles ("KIPs"), or rubber bullets, at Plaintiff and others. *Id.* Plaintiff asserts the bullets struck her, claiming as a result, she incurred a broken toe, damage to her ankle, and permanent injuries to both of her thighs.

---

[1] An officer of the Minneapolis Police Department killed George Floyd on May 25, 2020. The event triggered nationwide demonstrations.

*Id.* ¶ 33. Plaintiff alleges that after she was shot, she was forced on the ground and arrested for breaking curfew. *Id.* ¶ 28. She maintains that officers handcuffed her at approximately 7:40 p.m. *Id.*

Plaintiff alleges that when she arrived at the police station, she was "coerced into signing paperwork" indicating she "would be charged with a curfew violation," a Class C Misdemeanor. *Id.* ¶ 29. Plaintiff states she later learned the charges were changed to "Violation of State of Emergency," a Class B Misdemeanor. *Id.* Thereafter, Plaintiff was taken to the Lew Sterrett Detention Center and placed in a holding cell. *Id.* ¶ 30. Plaintiff states that officers removed her handcuffs at approximately 1:55 a.m. the following morning. *Id.* Plaintiff alleges that the officers' conduct has caused her immense pain, "disfigured her leg," and left her physically impaired, unable to work, and in need of ongoing medical treatment. *Id.* ¶ 33.

The Complaint sets forth six causes of action.[2] In Counts 1-3, Plaintiff alleges the City of Dallas is municipally liable under 42 U.S.C. § 1983 for retaliation in violation of her First Amendment rights, excessive force in violation of her Fourth and Fourteenth Amendment Rights, and unlawful seizure in violation of her Fourth Amendment rights. In Counts 4-5, Plaintiff claims that that the City of Dallas and Chief Hall in her individual capacity failed to train, supervise, and discipline police officers, resulting in constitutional deprivations pursuant to 42 U.S.C. § 1983. In Count 6, Plaintiff seeks permanent injunctive relief against the City of Dallas to prohibit use of

---

[2] Plaintiff purports to sue John Doe Police Officers 1-50 ("John Doe Defendants") in their individual capacities in Counts 1, 2, 3, and 6 but has not identified or served process on any individual officer. Further, Plaintiff's claims against the individual officers mirror those asserted against the other Defendants. "Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Thus, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations omitted). Thus, to the extent Plaintiff asserts claims against John Doe Defendants in their official capacities, the Court incorporates Plaintiff's claims against John Doe Defendants into its analysis of Plaintiff's claims against the City of Dallas and Chief Hall.

"less lethal" weapons in connection with protests and "firing or deploying" KIPs into a crowd for any purpose. *Id.* ¶ 138.

## II.    LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, the court may consider documents outside of the pleadings if they fall within

certain limited categories, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (2008) (citation omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

### III.     ANALYSIS

Generally, Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under Section 1983, a plaintiff must allege facts showing (1) a deprivation of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).

The Court first analyzes Plaintiff's claims against the City of Dallas. As discussed in turn below, municipal liability can attach in various ways. A plaintiff can allege liability through an official policy, custom, or, under narrow circumstances, a single incident. *See* Section A.i. Liability may also attach where a policymaker ratifies a constitutional violation. *See* Section A.ii. Further, a plaintiff may allege municipal liability where there is a failure to train, supervise, or discipline. *See* Section B. Next, the Court turns to Plaintiff's claims against Chief Hall in her individual capacity. *See* Section C. "Personal-capacity suits" under Section 1983 "seek to impose liability

upon a government official as an individual." *Goodman*, 571 F.3d at 395. Finally, the Court will consider Plaintiff's request for a permanent injunction. *See* Section D.

### A. *Municipal Liability (Counts 1-3)*

A municipal entity cannot be held vicariously liable under Section 1983 for the individual acts of its employees. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable" under Section 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted). Therefore, to impose Section 1983 liability on the City, Plaintiff must sufficiently allege "a policymaker; an official policy [or a custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). For purposes of a Rule 12(b)(6) motion to dismiss, a plaintiff "is not required to single out the specific policymaker in his complaint." *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016). Rather, a complaint "need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Id.* at 284.

### i. *Official Policy or Custom*

An official policy or custom may take multiple forms. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). An official policy is most clearly established through a policy statement formally announced by an official policymaker. *Id.* When an official policy is not explicit, however, a persistent and widespread practice by city officials or employees that is so common and well settled as to constitute a "custom" will suffice. *See id.* at 168-69. In addition, a single decision by a policymaker may, in rare circumstances, constitute a policy. *Id.* at 169; *Howell*

*v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016). "However, this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Therefore, Plaintiff must successfully plead facts demonstrating (i) an explicit policy, (ii) a custom established by a persistent and widespread practice by city officials or employees, or (iii) a "single incident," or decision by the final policymaker, that "was the moving force behind the constitutional injury." *Id.* at 543.

Absent allegations of an explicit policy, Plaintiff alleges the following in support of her claim that the City had a custom for which it may be held municipally liable:

- "The City's actual policy is to use KIPs and other 'less lethal' force in a deadly manner, as long as officers feel it is necessary to disperse protesters—even if it violates the City's own written policies and the Constitution." Compl. 27.

- "Incredibly, the City of Dallas has no apparent written policy whatsoever on the use of these sponge bullet KIPs,[3] even though the Dallas PD has been purchasing them since at least 2013." *Id.* ¶ 52.

- "Regardless of what the City's written policy says, therefore, the City's *de facto* policy allows police to use 'less lethal' ammunition against a crowd of non-threatening protestors." *Id.* ¶ 59.

- "[T]he City and Chief Hall reaffirmed the City's official unwritten policy and practice of using excessive, potentially deadly, force against non-threatening, peaceful protesters as a means of intimidation and control." *Id.* ¶ 64.

- "Defendants retaliated against Plaintiff for engaging in constitutionally protected activity and for the content and viewpoint of her expressions. Defendants' retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief." *Id.* ¶ 74.

- "It was the City of Dallas' custom and policy, as well as the City of Dallas' and Chief Hall's failure to train and supervise Dallas Police officers and issue corrective instructions after violations were brought to light, that caused the First Amendment retaliation." *Id.* ¶ 78.

---

[3] According to Plaintiff, the Dallas Police Department refers to sponge bullets as rubber bullets, so the terms appear to be used interchangeably in the Complaint. Compl. ¶ 51. Defendants clarified in the Motion that Plaintiff incorrectly labelled the 40 MM foam rounds that allegedly stuck Plaintiff as rubber bullets. Mot. 7 n.3.

- "It was the City of Dallas' custom and policy, as well as the City of Dallas' and Chief Hall's failure to train, supervise, and discipline its officers or issue corrective instructions after violations were brought to light, that caused the unlawful seizures and excessive use of force." *Id.* ¶ 106.

- "It is the pattern and practice of the City of Dallas and Chief Hall to arrest but not charge protesters as a means to suppress First Amendment rights. As explained above, it is also the City of Dallas' *de facto* unwritten policy for police to use 'less lethal'—but not 'nonlethal'—ammunition and devices against a crowd, including against protesters who are not immediately threatening serious physical injury." *Id.* ¶ 109.

These allegations, taken together, boil down to three separate claims that the City of Dallas had an unwritten policy or custom of using "less lethal" force against "non-threatening, peaceful protestors," amounting to (i) excessive force, (ii) unlawful seizure, and (iii) First Amendment retaliation.

**a.   Pattern**

Where a plaintiff relies on a pattern of prior incidents to establish a policy, the plaintiff must plead facts that demonstrate the prior incidents "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984)). The "pattern of abuses" must "transcend[] the error made in a single case." *Id.* at 850-51 (quoting *Piotrowski*, 237 F.3d at 582). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (alteration in original) (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely 'isolated instances.'" *Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

7

Excessive Force

In her attempt to show a pattern of excessive force, Plaintiff cites four specific incidents involving Dallas police officers. Compl. ¶¶ 34-42, 53-60. First, Plaintiff describes an incident, on or around May 30, 2020, when Dallas officers shot one man, Brandon Saenz, with a rubber or sponge bullet while he walked to the library, causing him to lose his left eye, receive facial implants, and require other medical treatment. *Id.* ¶ 34. Next, Plaintiff states that on June 1, 2020, police officers "kettl[ed]" nonviolent protestors onto a bridge, then after enclosing them there, launched smoke and tear gas canisters directly at the protestors and fired "tactile weapons" at them. *Id.* ¶¶ 35-39. Third, Plaintiff details an incident where a woman not affiliated with protests was shot in the face with a projectile and injured after she exited a grocery store. *Id.* ¶ 41. In addition to the three incidents occurring around the time of Plaintiff's injuries, Plaintiff points to a 2018 incident where police officers used Pepper Balls against "peaceful protestors" in alleged violation of the Dallas Police Department's General Order governing the weapon. *Id.* ¶¶ 53-60.

It is unclear in the Complaint whether the three 2020 incidents occurred before or after Plaintiff's injury "[o]n or about May 31, 2020." *Id.* ¶ 28. Plaintiff alleges that Saenz's injury occurred on May 30, 2020, on "[t]he same day" as Plaintiff's injury, *id.* ¶ 34, that the bridge incident took place on June 1, 2020, *see id.* ¶ 35, and that the incident involving the woman exiting the grocery store happened on May 30, 2020, *see id.* ¶ 41 & n.36. Thus, at best, two of the three 2020 incidents occurred the day before the incident involving Plaintiff. The timing of these events is important to the Court's analysis. *See, e.g., Valle*, 613 F.3d at 548 (holding that despite evidence an assistant police chief "was, at least, vaguely aware" of two similar violations that occurred after suspect was killed, this was "not sufficient to show that the City was on notice of similar constitutional violations *before*" the killing). But even if all three events occurred in the day or

days before Plaintiff's injury, it cannot be said that the actions "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842.

With respect to the 2018 incident involving the Pepper Ball weapon, another district court has recently held under similar facts:

> One incident of KIP deployment at the Botham Jean protest in 2018, followed by a separate instance the night of May 31, 2020, when an officer allegedly shot a protestor with a PepperBall weapon, is not a "persistent, widespread practice" that is "so common and well settled as to constitute a custom that fairly represents municipal policy."

*Monacelli v. City of Dallas*, No. 3:21-CV-2649-L, 2022 WL 4668054, at *7 (N.D. Tex. Sept. 30, 2022) (quoting *Piotrowski*, 237 F.3d at 579). Given the timing of the three 2020 incidents, the Court finds that one incident in 2018, followed by three instances occurring within the span of approximately three days in 2020, without more, does not amount to a plausible allegation of a "persistent, widespread practice" that is sufficiently "common and well settled." *See, e.g.*, *Peterson*, 588 F.3d at 850-52 (holding that 27 complaints of excessive force filed over a four-year period did not establish a pattern that represented an "official policy of condoning excessive force" because "the record [did] not indicate the size of the Fort Worth Police Department or how many arrests were made" during the relevant time period).

The Court therefore finds that, without more, the four incidents that did occur or may have occurred before the incident involving Plaintiff "are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal [S]ection 1983 liability." *Piotrowski*, 237 F.3d at 581 (citation omitted); *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 622-23 (5th Cir. 2018) (affirming dismissal of plaintiff's excessive force claim against the city for failure to allege a sufficient pattern).

9

Unlawful Seizure and Retaliation

Despite also claiming patterns of First Amendment violations, retaliation, and unlawful seizure, including "arrest[ing] but not charg[ing] protestors as a means to suppress First Amendment rights," Compl. ¶ 109, Plaintiff cites to no specific incidents of alleged suppression of speech or unconstitutional seizures aside from those alleged at the time of her injury. Instead, Plaintiff merely states, without elaboration, that a pattern exists, and that "similar constitutional violations" occurred in 2018 and 2020. *Id.* ¶ 80; *see id.* ¶¶ 74, 109. Even if the Court accepts the blanket assertion that officers in 2018 and 2020 unlawfully seized and retaliated against nonviolent protestors, which it cannot, Plaintiff is still unable to overcome the numerosity requirement as discussed above.

**b.      Single Incident Exception**

The Complaint further fails to state a plausible claim under the single incident exception. Under this narrow exception, Plaintiff must show that a final policymaker's decisions or orders were the "moving force" behind Plaintiff's constitutional injury. *Valle*, 613 F.3d at 543. To meet the moving force causation element, Plaintiff must demonstrate that the policy (in this case, the policymaker's decisions) was unconstitutional or was adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result. *See Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019). To base deliberate indifference on a single incident, "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003). The Fifth Circuit, "in conformity with the Supreme Court's jurisprudence, has been highly reluctant to permit this exception to swallow the rule that forbids mere respondeat

superior liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (footnote omitted).

Plaintiff alleges Chief Hall and the City's decision to use KIPs against Plaintiff exhibited deliberate indifference to Plaintiff's constitutional rights, warranting single incident liability under this exception. Compl. ¶ 80. Regardless of whether Plaintiff pleads sufficient facts to demonstrate Chief Hall and the unidentified "City of Dallas policymakers" had final policymaking authority,[4] a prerequisite to single incident liability, Plaintiff does not adequately allege that Chief Hall or the City policymakers made a decision that was the moving force of the alleged constitutional injuries. First, according to Plaintiff's Complaint and pursuant to the General Orders referenced in the pleadings, on-site officers make the ultimate decision of whether to deploy KIPs. *See* Compl. ¶ 58 (explaining Chief Hall did not know "the day after the [2018] incident whether the officer was instructed to use the weapon by the on-scene commander"); *see also* Motion Appendix,[5] ECF No. 6-1 ("App.") at 10-13 (902.00 Chemical Spray and Pepperball Launcher System (describing situations where on-scene officers can deploy weapon)); *id.* at 15 (904.00 Impact Weapons (explaining the use of impact weapons is justified when an "officer believes empty hand control is ineffective or inappropriate")); *id.* at 22-25 (908.00 40MM "Stinger" Less Lethal Launcher System

---

[4] The Fifth Circuit has determined that under Texas law, the Dallas City Council is the final policymaker for the city of Dallas. *Groden*, 826 F.3d at 286 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008)). Here, Plaintiff names three policymakers: "City of Dallas policymakers" generally, Chief Hall, and the Dallas City Council. *See* Compl. ¶ 9 (alleging Chief Hall is the "policymaker for John Doe police officers"); *id.* ¶ 13 (asserting officers used excessive force "acting on orders and policies promulgated by Chief Hall and City of Dallas policymakers"); *id.* ¶ 121 ("Chief Hall had direct . . . policymaking responsibilities for police officers in the use of physical and lethal force."); *id.* ¶ 132 (stating that "the City of Dallas, the Dallas City Council[,] and Former Chief Hall" "authorized and directed" officers to take actions that blocked citizens from "exercising their First Amendment rights").

[5] Documents that Defendants attach to their motion to dismiss are "considered part of the pleadings if they are referred to in . . . [P]laintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 498-99 (citation omitted). Plaintiff refers to the General Orders in her Complaint, and they are central to her claims. *See* Compl. ¶ 116 ("Although the City of Dallas has used sponge and/or rubber bullet KIPs since at least 2013 and the City issued General Orders for less lethal Pepper Ball KIPs by 2016 at the latest, the City and Chief Hall have never issued General Orders regarding sponge and/or rubber bullet KIPs.").

(stating situations for appropriate use by on-scene officers and reporting requirements after discharge to "first-line supervisor")). Plaintiff does not set forth facts that support the conclusion that Chief Hall, or any other alleged City policymaker, "instructed" the officers' "use of physical force" against Plaintiff. Compl. ¶ 84; *see id.* ¶ 64 (stating conclusion without support that Defendants "encouraged and defended" the practice); ¶ 73 (asserting Chief Hall ordered the alleged suppression). Without more, no decision to use force attributable to the City can be deemed a policy for purposes of municipal liability, and to hold the City responsible for the acts of officers in this situation would amount to impermissible "respondeat superior liability." *Roberts*, 397 F.3d at 295.

Further, Plaintiff does not plead facts that demonstrate Chief Hall or the City policymakers had knowledge that the weapons would be used to promulgate excessive force, unconstitutional seizures, or First Amendment violations, or deliberately chose to ignore those risks. To the extent Plaintiff argues that the 2018 incident should have put Chief Hall and the City policymakers on notice of the potential for misuse of KIPs, demonstrating their deliberate indifference, this prior incident alone cannot establish a level of knowledge and disregard that rises to the level of deliberate indifference, as opposed to negligence or gross negligence. *See James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992)); *Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020). Plaintiff does not plausibly allege that Chief Hall or the City policymakers were on notice of a high risk of constitutional violations,[6] ignored them, and caused Plaintiff's injury, particularly where officers

---

[6] The 2020 incidents also are insufficient to provide notice. As noted above, two or three alleged events occurring within approximately 24 hours before Plaintiff's injury does not provide sufficient notice to Chief Hall or the City of of prior similar constitutional violations to demonstrate deliberate indifference "or that municipal liability can attach for the alleged failure to rectify whatever problems existed twenty-four hours later." *Monacelli*, 2022 WL 4668054, at *7 n.4.

on the scene retained decision-making authority on the deployment of crowd control weapons. As such, Plaintiff's allegations are insufficient to establish that Chief Hall or the City policymakers' decisions "actually caused" the alleged injuries. *City of Canton*, 489 U.S. at 391.

Nor does Plaintiff plead facts that warrant the application of the single incident exception with respect to any decisions made by the Dallas City Council. Plaintiff makes the conclusory claim, in connection with her request for a permanent injunction, that the Dallas City Council "authorized and directed" officers' actions to prohibit protestors "from fully exercising their First Amendment rights" Compl. ¶ 132. Plaintiff does not, however, identify a specific decision made by the Dallas City Council or plead that the Dallas City Council specifically had knowledge of any custom or prior misuse of less lethal weapons that violated protestors' rights. On the contrary, Plaintiff does acknowledge that the Dallas City Council responded with concern when they learned of allegations of misuse of force after the fact and ordered an investigation into the June 2020 incident in response. *See id.* ¶ 67. Plaintiff's Complaint does not plead facts that indicate a decision made by, or attributable to, the Dallas City Council was the moving force behind any alleged constitutional injury.

Therefore, in light of the above, Counts 1 to 3 of Plaintiff's Complaint are dismissed for failure to plead an official policy or custom through either a pattern of violations or the single incident exception.

## ii.   *Ratification*

Thought it is not clear from the Complaint, Plaintiff appears to also claim municipal liability on the theory that Chief Hall and the City of Dallas, as policymakers, ratified the officers' alleged unlawful actions. *See* Compl. ¶ 53 ("This week's egregious abuses are by no means the first time the City of Dallas and Chief Hall have discovered—and then ratified—officers' use of

13

'less lethal' ammunition against peaceful protesters."); *see also* ¶¶ 59, 60, 116, 125 (stating Chief Hall previously ratified the use of Pepper Ball KIPs in 2018).

Ratification requires that a policymaker "knowingly approve a subordinate's actions and the improper basis for those actions." *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 603 n.9 (5th Cir. 2001)). A policymaker's "mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality" unless the conduct is "manifestly indefensible." *Id.* (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)). The Fifth Circuit has limited ratification to "extreme factual situations." *Peterson*, 588 F.3d at 848 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). When an officer exhibits "incompeten[ce] and catastrophic performance," a policymaker's silence on the conduct can amount to ratification. *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985); *see also id.* at 168, 171-72 (finding that police department approved officers' conduct when the police department did not admit error, reprimand its employees, or discharge anyone after its officers mistook an innocent man as a fugitive, "poured their gunfire at the truck," "showed no inclination to avoid inflicting unnecessary harm upon innocent people," and killed the man).

As stated above, the Dallas City Council is the final policymaker for the city of Dallas. *Groden*, 826 F.3d at 286. Plaintiff neither explicitly claims nor pleads facts to demonstrate that the Dallas City Council ratified the officers' alleged conduct. On the contrary, Plaintiff provides evidence in her Complaint that the Dallas City Council condemned any alleged unlawful violence. *See* Compl. ¶ 67 (describing Dallas City Council's concern regarding allegations that officers used tear gas against protestors, noting a member's order to investigate the incident, and citing a news

article describing the Council's nine-hour meeting where members discussed reforms in response to the violence).

Even if Plaintiff plausibly alleged that Chief Hall was a final policymaker for purposes of municipal liability, Plaintiff does not plead facts that demonstrate Chief Hall or any other City policymaker approved the officers' decision, upheld the basis for it, or defended the officers in any other way. Plaintiff explains that Chief Hall, the day after the June 1, 2020, bridge incident, made a statement that she "strongly believe[s] we made the right decisions to deter and disperse the large crowd on the bridge." *See* Compl. ¶ 35. This statement, without more, cannot support the proposition that Chief Hall approved of the officers' decision to strike Plaintiff on a separate day under different circumstances, or that Chief Hall approved of unlawful use of projectiles, gas, arrests, or violence to strip protestors of their constitutional rights generally. Plaintiff does not allege that Chief Hall made any statements in connection with her own injury. Further, Plaintiff's Complaint contradicts the claim that Chief Hall approved of the use of excessive force, discussing that in 2018, Chief Hall "admitted that she was concerned when she learned police fired the ammunition with no 'immediate threat to the public' to justify their use under the General Orders," "called for a review of the pepper-ball incident," and made a statement indicating she requested the "investigative unit to conduct a full review" and planned to "meet directly with the leadership of the demonstration to address their concerns." Compl. ¶ 54 (citation omitted); *see Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (noting that when claims are "contradicted by the other facts alleged in the complaint," it can make "the claim implausible on its face"). And while the review, done in response to a separate, prior incident as opposed to Plaintiff's injury, found that the use of the Pepper Ball weapon was "'consistent' with the department's general orders," Compl. ¶ 58, a department's investigation, report, and conclusions

regarding an incident do not amount to ratification regardless. *See Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (holding that a police chief did not ratify officers' unconstitutional arrest when the police chief investigated the event and found "there was no violation from which he could discipline the officers").

Nor has Plaintiff plausibly pleaded approval through Chief Hall's alleged silence or inaction regarding the officers' conduct. Assuming without deciding that the officers violated Plaintiff's constitutional rights, the circumstances of the encounter between Plaintiff and the officers do not amount to the extreme situation contemplated by the Fifth Circuit. *Peterson*, 588 F.3d at 848. Unlike the officers in *Grandstaff* who ambushed and killed an innocent man they mistook as a fugitive, the officers here deployed "less lethal" force against Plaintiff after she failed to obey a city regulation. *See Grandstaff*, 767 F.2d at 168; *see also Snyder*, 142 F.3d at 798 (holding that police shooting of fleeing suspect did not amount to an extreme factual situation, "particularly given the absence of evidence suggesting a culture of recklessness" in the police department). Chief Hall's silence cannot amount to ratification under these facts.

For the foregoing reasons, Plaintiff fails to state a claim for municipal liability under a ratification theory.

iii.  ***Underlying Constitutional Violations***

Even if Plaintiff had adequately pleaded an official policy or custom or ratification, however, a plaintiff who fails to demonstrate constitutional injury attributable to the individual officers may not subject the city to municipal liability based on the same event. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); *Cook v. Hopkins*,

795 F. App'x 906, 918 (5th Cir. 2019) ("[B]ecause we have found no constitutional violations on the part of the Individual Defendants, the City cannot be subjected to municipal liability"); *Martinez v. Smith*, 200 F.3d 816, 1999 WL 1095667, at *2 (5th Cir. 1999) (holding that plaintiff could not "show any constitutional injury that is attributable to the county" because she failed to "show any constitutional violation by the individual defendants"); *Smith v. Walden*, 228 F.3d 408, 2000 WL 1056091, at *1 (5th Cir. 2000) (holding appellant's claims against county were not viable absent constitutional injury by individual officer); *Blair v. City of Dallas*, 666 F. App'x 337, 342 (5th Cir. 2016) (holding that dismissal of *Monell* claims against the City of Dallas were appropriate where district court properly granted summary judgment on claims against individual officers); *Cardenas v. San Antonio Police Dep't*, 417 F. App'x 401, 402 (5th Cir. 2011) (holding that because "individual defendants did not inflict any constitutional harm on Cardenas," City of San Antonio was not subject to municipal liability).

The City argues that Plaintiff's unlawful seizure claim, to the extent it is based on her arrest, should be dismissed for failing to properly assert an underlying constitutional violation. Again, though it is not clear from her Complaint, Plaintiff appears to bring two separate arrest-based claims. Although Plaintiff labels the claim as one for an unlawful seizure in violation of the Fourth Amendment, she also seemingly attempts to assert a First Amendment retaliatory arrest claim. *See* Compl. ¶ 109 ("It is the pattern and practice of the City of Dallas and Chief Hall to arrest but not charge protesters a means to suppress First Amendment rights."). The City asserts that Plaintiff has not plausibly alleged either claim because probable cause existed for Plaintiff's arrest, and Plaintiff did not plead facts to meet the probable cause exception under *Nieves v. Barlett*. Mot. 16 (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019)).

To establish a First Amendment retaliation claim, a plaintiff must plead facts that demonstrate: "(1) [she] was engaged in constitutionally protected activity, (2) the officers' action caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (citation omitted). Further, "[w]hen asserting a claim for retaliatory arrest, a plaintiff must first establish the absence of probable cause, and then demonstrate that the retaliation was a substantial or motivating factor behind the arrest." *Kokesh v. Curlee*, 14 F.4th 382, 396 (5th Cir. 2021) (citing *Nieves*, 139 S. Ct. at 1725). Under the *Nieves* exception, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that [plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." 139 S. Ct. at 1727 (2019).

Similarly, under Fourth Amendment, "[i]f there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Wells v. Bonner,* 45 F.3d 90, 95 (5th Cir.1995)); *see also, e.g.*, *Bey v. Prator*, 53 F.4th 854, 858 (5th Cir. 2022) ("Because of the possibility of qualified immunity, however, a plaintiff seeking to recover damages [in] an action under § 1983 for a false arrest must prove not only that probable cause did not exist but also that the officers were objectively unreasonable in believing there was probable cause for the arrest." (internal quotation marks and citation omitted)).

The existence of probable cause will, therefore, generally defeat underlying claims of both First Amendment retaliation and an arrest in violation of the Fourth Amendment. Here, the City claims that officers had probable cause to arrest Plaintiff because Plaintiff, pursuant to her

Complaint, was present on Harwood Street in Downtown Dallas at around 7:40 p.m. on May 31, 2020. *See* Mot. 16-17. *Compare* Compl. ¶ 28 ("On or about May 31, 2020"), *with* Compl. ¶ 34 (stating the incident occurred on the same day as another incident on May 30, 2020). Her presence there, according to the City, violated City regulations excluding people from that area. *See* Mot. 17; Proclamation by the Governor of the State of Texas, App. 61-62; Office of Dallas Mayor Eric Johnson Proclamation Declaring a Local State of Disaster, App. 63-65; Emergency Regulations, App. 66-70. The regulations barred people from streets, including Harwood Street, from 7:00 p.m. to 6:00 a.m. *See* Mot. 17.[7] The Court notes that these regulations went into effect on May 31, 2020, and at least one allegation in Plaintiff's Complaint establishes that she was in an area under curfew on May 31, 2020. As such, Plaintiff has not adequately pleaded that officers lacked probable cause to arrest her.

The analysis of Plaintiff's Fourth Amendment claim ends there. But with respect to the First Amendment retaliation claim, the mere absence of probable cause is insufficient to justify dismissal. If a plaintiff's claim falls into the "unique class of retaliatory arrest claims" where the arrest was part of "an 'official municipal policy' of intimidation" against the plaintiff, the existence of probable cause alone will not defeat the claim of unconstitutional arrest. *Payton v. Town of Maringouin*, No. 21-30440, 2022 WL 3097846, at *3 (5th Cir. Aug. 3, 2022) (quoting *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1954 (2018)); *see also Gonzalez v. Trevino*, 42 F.4th 487, 494 (5th Cir. 2022). Under *Lozman*, a plaintiff need only show her constitutionally protected

---

[7] The Court takes judicial notice of the regulations as matters of public record. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Griffin v. City of Sugar Land*, No. CV H-18-3121, 2019 WL 175098, at *2 (S.D. Tex. Jan. 11, 2019) (taking judicial notice of city ordinance establishing curfew), *aff'd sub nom. Griffin v. City of Sugarland*, 787 F. App'x 244 (5th Cir. 2019); *In re Waller Creek, Ltd.*, 867 F.2d 228, 238 n.14 (5th Cir. 1989) (taking judicial notice of city ordinance sua sponte as legislative fact).

conduct was a "motivating factor" or "substantial factor" for the arrest. 138 S. Ct. at 1955; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

There is an open question of whether Plaintiff's claim of retaliation falls into the *Lozman* class of claims, as Plaintiff attempts to allege the existence of a policy of retaliation attributable to the City. *See* Compl. ¶¶ 64, 74, 110. If Plaintiff had successfully pleaded such a policy, which she did not, *see supra* Section A.i., the existence of probable cause alone would not defeat the underlying claim. *Lozman*, 138 S. Ct. at 1954. Therefore, Plaintiff's underlying First Amendment retaliatory arrest claim would fail regardless of whether she was required to plead lack of probable cause.

**B.   *Municipal Liability: Failure to Train, Discipline, or Supervise (Counts 4 and 5)***

Plaintiff alleges that the City of Dallas failed to properly train officers on the use of "less lethal" force, including weapons like KIPs for crowd control, and on the First Amendment rights of protestors. *See* Compl. ¶¶ 52-53, 59-60, 78-79, 114-116, 123-24.

Claims for failure to train, supervise, or discipline are species of *Monell* liability. *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021). The "failure to train[, supervise, or discipline] can amount to a policy if there is deliberate indifference to an obvious need for training[, supervision, or discipline] where citizens are likely to lose their constitutional rights." *Id.* (citation omitted). For a failure to train, supervise, or discipline claim to survive a motion to dismiss, Plaintiff must plausibly allege that (1) the City failed to train, supervise, or discipline the officers involved; (2) there is a causal connection between the alleged failure to supervise, train, or discipline and the alleged violation of Plaintiff's rights; and (3) the failure to train, supervise, or discipline constituted deliberate indifference to Plaintiff's constitutional rights. *See Peña*, 879 F.3d at 623; *Hunter v. City of Houston*, 564 F. Supp. 3d 517, 529 (S.D. Tex. 2021) (citing *Deville*,

20

567 F.3d at 171), *appeal dismissed sub nom. Hunter v. City of Houston, Texas*, No. 21-20632, 2022 WL 1782610 (5th Cir. Mar. 21, 2022). It must be obvious that "the highly predictable consequence" of not training, supervising, or disciplining officers is that they "would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk." *Peterson*, 588 F.3d at 849 (alteration in original) (citation omitted).

i.    ***Deliberate Indifference***

Deliberate indifference requires more than a showing of "negligence or even gross negligence"—it is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle*, 613 F.3d at 547 (citation omitted). A court infers deliberate indifference "either from a pattern of constitutional violations or, absent proof of a pattern, from showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Garza v. City of Donna*, 922 F.3d 626, 637-38 (5th Cir. 2019) (internal quotation marks and citation omitted). A pattern may include "'persistent and widespread . . . practices,' 'systematic maladministration' of the laws, practices that are 'permanent and well settled,' and 'deeply embedded traditional ways of carrying out . . . policy.'" *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 173-74 (1970)).

To plausibly allege deliberate indifference, a plaintiff must demonstrate that "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. If a training program "does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for."

*Brown*, 520 U.S. at 407. "[C]ontinued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* (citation omitted).

**a.    Pattern**

Plaintiff asserts that the City failed to train or supervise its officers on the use of weapons for crowd control and failed to discipline officers for prior violations involving the use of less lethal weapons on non-threatening protestors, causing First Amendment violations unlawful seizure, and excessive force. *See* Compl. ¶¶ 52-53, 59-60, 74, 78-79, 106, 114-16, 117-18, 109, 123, 128-29.

For the reasons stated in Section A above, Plaintiff has failed to allege a pattern of constitutional violations. *See Hutcheson*, 994 F.3d at 482. The alleged 2018 incident, even coupled with isolated events in the days before or after Plaintiff's injury, is insufficient to constitute a pattern of deliberate indifference. *See* Section A.i. Further, Plaintiff, despite also claiming patterns of violations relating to First Amendment rights, unlawful arrest, and seizure, again does not cite any other incidents of suppression of speech, retaliation, or unconstitutional arrest, nor does she attempt to tie the 2018 incident to such violations. *See* Compl. ¶ 80, *see id.* ¶¶ 74, 109 (making conclusory statements that a pattern exists, and that "similar constitutional violations" occurred in 2018). Plaintiff again fails to allege a pattern because she fails to plead prior instances that meet the numerosity requirement as described in Section A.i.

Accordingly, Plaintiff fails to establish a pattern of similar violations that constitutes deliberate indifference.

b.      **Single Incident Exception**

Plaintiff also cannot establish deliberate indifference through the single incident exception because she does not plead sufficient facts to meet the stringent standard for the exception.

As noted above, in the absence of a pattern, a plaintiff may establish deliberate indifference by showing a single incident where the potential for constitutional violations was an "obvious" or "highly predictable consequence" of a failure to train, supervise, or discipline. *Brown*, 520 U.S. at 409. The Fifth Circuit has stated that "[w]ithout a pattern of constitutional violations, deliberate indifference can be inferred only in narrow and extreme circumstances." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 627 (5th Cir. 2018). With respect to failure to train claims, the exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624.

Plaintiff does not plead facts that show officers did not receive any or adequate training on the use of "less lethal" weapons or on the First Amendment rights of protestors; instead, she provides conclusory allegations. *See* Compl. ¶¶ 59-61. Plaintiff claims the City failed to issue General Orders to govern its KIPs and to "institute any training with regard to the range and risks of certain incapacitation, or significant injury." Compl. ¶¶ 61, 122. Defendants, however, submit the revised 2018 General Orders governing the use, training, and authorization of the 40MM 'Stinger' Less Lethal Launcher System, or the "sponge bullet" weapon that struck Plaintiff, and the Pepper Ball weapon. *See* App. 22-25 (908.00 40MM "Stinger" Less Lethal Launcher System); *id.* at 10-13 (902.00 Chemical Spray and Pepperball Launcher System); *see also id.* at 15 (904.00 Impact Weapons). The pleadings demonstrate that the officers were indeed trained on the exact device at issue. Plaintiff's claims, cast without a factual basis and contradicted by Defendants' documents, are rendered baseless.

23

Moreover, Plaintiff has not demonstrated that a single incident of failure to supervise or discipline caused her injuries. Beyond stating so in a conclusory fashion, Plaintiff does not plausibly allege that Defendants failed to supervise or discipline the officers involved in her injury. *See* Compl. ¶ 114. The only factual basis Plaintiff provides is a statement that Chief Hall took "no action against the officers" after they used the Pepper Balls on peaceful crowds in a separate incident, specifically after learning that one officer fired the weapon with an expired "certification on the gun." *Id.* ¶¶ 55, 58. This isolated incident of alleged inaction, occurring two years before Plaintiff's confrontation with different officers, cannot establish a plausible claim of deliberate indifference to Plaintiff's injuries under the single incident exception.

Accordingly, Plaintiff has not plausibly pleaded that the City's training policies were deficient or that the need for more training, supervision, or discipline was "obvious," particularly in light of contrary evidence detailing training and supervision on the use of the weapons and devices in question. *Brown*, 520 U.S. at 409. Nor can Plaintiff assert the officers received "no training whatsoever." *Peña*, 879 F.3d at 624.

Plaintiff fails to plead deliberate indifference through a pattern or the single incident exception, rendering her unable to plead a policy of failure to train, supervise, or discipline for purposes of municipal liability.

### C.  *Individual Liability: Failure to Train, Discipline, or Supervise (Counts 4 and 5)*

Plaintiff also brings suit against Chief Hall in her individual capacity regarding her alleged failure to train, supervise, and discipline Dallas Police officers in violation of Plaintiff's Fourth and Fourteenth Amendment Rights. *See* Compl. ¶¶ 112-29.

"Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir.

2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987)). To establish Section 1983 liability against a supervisor, "the plaintiff must show that: (1) the police chief failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts*, 397 F.3d at 292. "[A]n individual to whom the municipality has delegated responsibility to directly supervise the [municipal] employee[s]" is held to the same standard of deliberate indifference as the municipality. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994).

Plaintiff does not plead facts that demonstrate deliberate indifference on behalf of Chief Hall. Plaintiff fails to allege that Chief Hall had notice of similar prior violations, as Plaintiff wholly failed to plead prior acts sufficient to constitute a pattern. *See supra* Sections A.i, B.i. Additionally, as to the 2018 incident involving the Pepper Ball weapon, Plaintiff does not demonstrate that Chief Hall responded with deliberate indifference. Plaintiff's own pleading details that Chief Hall expressed concern for allegations of police misconduct, called for a review of the incident, and planned to meet directly with leaders of the protests to address their concerns. *See* Compl. ¶ 54. Plaintiff's disagreement with the outcome of those actions does not equate to a plausible allegation of deliberate indifference. *Doe*, 15 F.3d at 458 (explaining that a supervisor whose actions were "ineffective" was not "deliberately indifferent").

Because Plaintiff's claim fails for lack of deliberate indifference, the Court "need not discuss the remaining prongs of supervisor liability." *Goodman*, 571 F.3d at 396 (citing *Estate of Davis*, 406 F.3d at 382). Accordingly, the Court dismisses Counts 4 and 5 of the Complaint as they relate to Chief Hall in her individual capacity.

### D.  *Permanent Injunction (Count 6)*[8]

Plaintiff argues she is entitled to permanent injunctive relief against the City and its police officers to prohibit use of "less lethal weapons," including "tear gas, smoke bombs, flashbangs, pepperballs, mace, and other chemical agents in connect with protests: (a) against any protestors, bystanders, civilians, or members of the press, who are not posing any immediate threat of serious harm to anyone, or (b) using such devices . . . for purposes of controlling peaceful crowds." Compl. ¶ 138. Plaintiff further requests prohibition of "firing or deploying kinetic impact projectiles into a crowd for any purpose." *Id.* Plaintiff alleges the City of Dallas's tactics have caused irreparable harm under the First Amendment and Fourth Amendment and will continue to cause injury absent injunctive relief. *Id.* ¶¶ 132-38.

"A party seeking a permanent injunction must show: (1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). Further, "remedies available at law, such as monetary damages," must be "inadequate to compensate for that injury." *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008). As discussed above, the Court has dismissed Plaintiff's claims, rendering Plaintiff unable to "show actual success on the merits." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004). Accordingly, the Court denies Plaintiff's request for permanent injunctive relief at this stage.

---

[8] Defendants did not move to dismiss this Count. The Court, however, addresses the issue at this stage as the other counts against properly served Defendants, which form the underlying basis for the Count, have been dismissed.

IV.    **CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendants U. Reneé Hall and the City

of Dallas's Motion to Dismiss Plaintiff's Original Complaint [ECF No. 6] and **DISMISSES**

Counts 1 to 6 of Plaintiff's Original Complaint & Jury Demand [ECF No. 1] **WITHOUT**

**PREJUDICE** as to all parties except John Doe Defendants, as sued in their individual capacities.

Plaintiff has not identified nor served John Doe Defendants with process since the suit was

commenced on May 26, 2022. If Plaintiff seeks to identify and serve any individual officers, she

must do so by January 11, 2023.

Plaintiff has neither filed any response to the Motion, nor any motion for leave to amend

her complaint if dismissed. If she intends to do so, Plaintiff must seek leave of court to file an

amended complaint by January 11, 2023. If a motion for leave to file, with the proposed amended

complaint attached, is not filed by this date, Plaintiff's claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED December 28, 2022.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**